UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRIAN J. WHITE, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:17-CV-578-JD-MGG |
| WARDEN, | ) ) ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Brian J. White, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (MCF 17-02-383) where a Disciplinary Hearing Officer (DHO) found him guilty of attempting to traffick in violation of Indiana Department of Correction (IDOC) policies A-111 and A-113 on March 8, 2017. ECF 1 at 1, ECF 10-3 at 1. As a result, he was sanctioned with the loss of 90 days earned credit time and demoted in credit class. *Id.* The Warden has filed the administrative record and White filed a traverse. Thus this case is fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418

U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985). In his petition, White argues there are three grounds which entitle him to habeas corpus relief.

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, White was found guilty of attempting to traffic in violation of IDOC policies A-111 and A-113. Specifically, IDOC offense A-111 prohibits inmates from

2

"[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The Disciplinary Code for Adult Offenders defines "conspiracy" as "[t]wo (2) or more offenders or other persons planning or agreeing to commit acts which are prohibited by Department or facility rule, procedure or directive." The Disciplinary Code for Adult Offenders. http://www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders_6-1-2015.pdf. IDOC offense A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." Appendix I, *supra*. And "[a] person who, without the prior authorization of the person in charge of a penal facility . . . , knowingly or intentionally delivers . . . an article to an inmate . . . of the facility . . . commits trafficking with an inmate, a Class A misdemeanor." Ind. Code § 35-44.1-3-5(b)(1),(3).

The Conduct Report charged White as follows:

> During the course of a month long investigation information was gathered on Offender Brian White, 238512. This information pertained to him, and a female suspect on the outside. White got access to Offender Jerry Hardman's PIN number with the assistance of this female via JPay. White was able to communicate using Hardman's number on the offender phone system. They spoke of "setting up parties" and what & who would be at the party; crystal and cake (code for crystal meth and Suboxone.) Based on information gathered, outside law enforcement was contacted and the female suspect was monitored. Also White communicated with this female over the JPay system but she did not use her real name.

> On February 4th the female suspect was stopped, vehicle was searched and she was placed in jail (on going investigation.) Through her own admission she was on her way to meet someone [who] was going to bring drugs inside this prison. An Aramark worker was detained and arrested on the 5th for attempting to traffick [ ]. It is not clear if White was actually a part of this deal but with all the telephone calls, the JPays and his association with Hardman and this female it has been established that he was attempting to conspire with her to set up drugs coming inside.
>
> All evidence can be viewed or listened to at the DII office. Case reference listed below [17-MCF-0021 Trafficking and 17-MCF-0020].

ECF 10-1 at 1.

In his first ground, White argues his due process rights were violated because he was denied a fair hearing before an impartial decision-maker. ECF 1 at 2. As an initial matter, however, White has not met the exhaustion requirement contained in 28 U.S.C. § 2254(b), as to this issue. To have exhausted his administrative remedies, White must have properly presented the issue at each administrative level. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). However, notwithstanding White's failure to exhaust, the court may deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Turning to the merits of his claim, in the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However,

4

due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the events underlying the charge. *Id.*

The court's review of the record shows there is no evidence in the record to support White's contention that the DHO was biased against him or that he did not have an impartial hearing. Here, White claims he was subjected to an unfair hearing because the DHO, who presided over his hearing, lacked impartiality when he stated "since [Internal Affairs] wrote [him] up he was finding [him] guilty." ECF 1 at 2. But here White has not shown that the DHO was directly or otherwise substantially involved in the factual events underlying the disciplinary charges, or the investigation of the incident. *Piggie*, 342 F.3d at 666. The fact the DHO found the conduct report and confidential internal affairs investigation to be credible and discredited White's account of the events does not establish the DHO was biased against him. Therefore, White's first ground does not identify a basis for habeas corpus relief.

In his second ground, White argues his due process rights were violated because he was denied the right to present documentary evidence. ECF 1 at 2. Here, he claims he requested a copy of his JPay contact list to show that "Crystal" is a person and not a drug. *Id*. He further asserts he asked prison officials to contact "Crystal" to confirm that she was "willing to come to Indiana from Chicago and be picked up by the female that [he] was on the phone with." *Id*. A prisoner has a right to call witnesses and present documentary evidence in a prison disciplinary proceeding. *Wolff*, 418 U.S. at

566. White's right to present evidence was satisfied. During his screening, White had the opportunity to request evidence in his defense. However, the only evidence White requested during his screening was his JPay phone conversations, not his JPay contact list. ECF 10-2 at 1. He did not request his JPay contact list until he filed his facility-level appeal. ECF 10-5 at 2. In that appeal, he asserted "My JPay will show clear as day Crystal Jones is the mother of my child." *Id*. But his request was too late. Due process is not denied when prison officials deny untimely, day-of-hearing requests for evidence or refuse to consider evidence that could have been but was not timely requested. *McPherson*, 188 F.3d at 786; *Hamilton v. O'Leary*, 976 F.2d 341, 346-47 (7th Cir. 1992). However, even if White had timely requested his JPay contact list and his request had been denied, that error would have been harmless because there is no indication in the record that this evidence "might have aided [his] defense." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

In this case, as stated, the only evidence White timely requested was his JPay phone conversations. ECF 10-2 at 1. While White had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, he did not necessarily have a right to personally review that evidence. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). White's request to review his JPay phone conversations was denied because they were an integral part of an ongoing, extensive internal affairs investigation into drug trafficking activities in the prison.

6

White's JPay phone conversations are contained in a confidential internal affairs investigation file (DII 17-MCF-0020 and 17-MCF-0021, hereinafter referred to as "file") which details personal and identifying information of those offenders and civilians, who have been involved in trafficking activities. Thus, the release of the file would have given White and other offenders crucial, sensitive information about the investigation as well as insight into the surveillance techniques used by prison investigators. The court has reviewed the file and finds that prison officials did not err in determining that it posed a security threat to disclose the information contained in the file.

White also did not have a right to review the file because it does not contain exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). While White has a right to present relevant, exculpatory evidence in his defense, the file is made up of incriminating phone conversations evidencing his participation in drug trafficking activities in the prison.

For instance, in one phone conversation White had on the morning of January 18, 2017, he asks the woman on the other end, Oliver, "[i]n order to go pick up 'Crystal' and uh the cake, how much more do you need?" ECF 10 at 12, ECF 12 at 98. White says he is just trying to get Oliver "to pick up 'Crystal' around 7", to which Oliver responds, "I

7

can't pick up at 7 . . . well maybe . . . it's been a while since I've f***** with any 'Crystals.'" *Id*. White and Oliver then engage in a conversation about White wanting "14 gigabytes" of the 'Crystal,' not the cake. *Id*. White next says, "Yeah, but I be cool . . . with 7 cuz that's still like 21 . . . that'll still get a m*********** like 21 . . . if I can pick up 'Crystal' and get like 40 slices of cake, that's a party." *Id*. Immediately thereafter, Oliver begins mumbling to herself "40 times 20 that's 800 it'd be about 1500." *Id*. Later in the call, White asks Oliver "when we gonna be ready to throw this party?" to which Oliver responds, "it's gonna be probably a couple weeks." *Id*. Then, in another phone conversation on January 20, 2017, White told Oliver he wanted "Crystal" to be picked up for a party in three days—Oliver states that is not going to happen but she can come to the next one. ECF 10 at 19, ECF 12 at 95-99. Given the context of the discussions between White and Oliver, there is nothing in these phone conversations that are exculpatory or helpful to White as they detail his attempts to traffick "Crystal" (crystal methamphetamine) and "cake" (suboxone) into the prison. Furthermore, the court has reviewed the file and notes White's other phone conversations are likewise not exculpatory as they too evidence his participation in trafficking activities. *Jeffries v. Neal*, 737 Fed. Appx 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs.").

To the extent the DHO might have erred in not releasing that portion of the file containing White's JPay phone conversations to him, that error was harmless. Here, the

8

court notes that while the DHO or prison officials could have redacted the file and potentially given White copies of his phone conversations, he has not shown that the denial of that evidence resulted in actual prejudice rather than harmless error. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Because White participated in the JPay phone conversations, he was already aware of the contents of those conversations. In other words, he has not shown that being able to review his own phone conversations would have provided him with anymore information than what he had already known. Therefore, White's second ground does not identify a basis for granting habeas corpus relief.

In his third ground, White argues his due process rights were violated because he was not given "a written copy of the finding of facts in [his] case." ECF 1 at 3. Due process requires that a fact-finder provide a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564-65. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the DHO's report of disciplinary hearing indicated she considered the staff reports, the statement of the offender, and DII case files 17-MCF-0020 and 17-MCF-0021. DE 10-3 at 1. His statement is not lengthy but the DHO adequately identified the evidence he relied on for his decision, and it is clear that he chose to credit the evidence collected and the conclusions reached by internal affairs investigators, instead of White's explanation of his innocence—that he

9

was simply planning a party for when he would be released from prison in eight years. Because the DHO's written statement satisfied the minimal requirements of due process, and he thoroughly considered all of the record evidence in finding White guilty, this third ground does not provide a basis for habeas corpus relief.

As a final matter, to the extent White seems to imply in his petition that there was insufficient evidence for the DHO to find him guilty of attempting to traffic drugs, that contention fails. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In the conduct report, Internal Affairs Investigator Harbaugh detailed her month long investigation of White and a female suspect (Oliver) who were involved in trafficking drugs into the prison. ECF 10-1 at 1. Harbaugh documented the fact that White was able to access Offender Jerry Hardman's PIN number with the assistance of the female suspect by utilizing JPay. *Id*. White and the female suspect often spoke on the phone about "setting up parties" and "what [and] who" would be at the parties: crystal and cake (code for crystal methamphetamine and suboxone). *Id*. On February 4, 2017, the female suspect was arrested and, at that time, Harbaugh documented her admission that "she was on her way to meet someone [who] was going to bring drugs inside [the] prison." *Id*. The next day, on February 5, 2017, an Aramark worker was arrested for attempting to traffic drugs into the prison. *Id*. While Harbaugh noted he did not know if White was part of this specific drug deal, his phone calls, the Jpay conversations, and his association with Hardman and the female suspect were enough

10

to establish he was conspiring with her to traffic drugs into the prison. *Id.* Given Harbaugh's detailed conduct report coupled with the extensive internal affairs investigation linking White to a conspiracy to traffic drugs into the prison with Oliver's assistance, there was more than "some evidence" for the DHO to find White guilty of offenses A-111 and A-113. While White claimed he was simply planning a party for when he would be released from prison in eight years, the DHO was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). Therefore, the DHO's finding that White was guilty was neither arbitrary nor unreasonable in light of these facts.

If White wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Brian J. White's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on December 11, 2018

                                                          /s/ JON E. DEGUILIO
                                                          JUDGE
                                                          UNITED STATES DISTRICT COURT